# SUPREME COURT.

## CHARLES WEBER and others agt. JOHN FOWLER, &c

Where notice of *lis pendens* was filed and indexed in the county clerk's office, giving the name of one of the parties in the title of the cause "John F. Fowler," instead of *John Fowler,* the true name, *held,* that the index was sufficient to put a purchaser *pendente lite* on inquiry, and to charge him with all the knowledge to which that inquiry, if made, would have led.

Where it appeared by the decree that the plaintiffs were entitled to a lease of the premises described in the notice of *lis pendens,* from the original owner, the execution of which would have been charged upon the purchaser *pendente lite,*

*Held,* that the plaintiffs having elected to take, by the decree, instead of a *specific performance,* operating on the estate itself, a *substituted equivalent in money,* decreed to be paid to them by the original owner personally, they could not, on an allegation of the original owner's subsequent insolvency, turn

round and ask the court to make a different decree, charging the purchaser *pendente lite;* especially as the latter, although negligent, had no actual notice of the suit.

*New-York Special Term,* 1854.

APPLICATION by petition to compel the purchaser of premises *pendente lite,* to perform a decree made against the original owner.

—— —— *for motion.*
—— —— *opposed.*

ROOSEVELT, Justice. Prior to the statutory provision, contained in the Revised Statutes, (2 *R. S.* 174, § 76,) on the subject of purchases of real estate during the pendency of suits, it was the established rule of courts of equity, that such purchasers, whether notified or not, took their titles subject to the result of the litigation. The rule, although seemingly necessary to give effect to chancery decrees and to obviate the inconvenience of a constant change of parties, at times worked great injustice to innocent persons, and induced at last the interference of the legislature.

By the act of 1823, incorporated in the Revised Statutes, it was provided that, to render the filing of a bill in chancery constructive notice to a purchaser of real estate, it should be the duty of the complainant therein to file at the same time, with the *clerk of the county,* a notice of the pendency of the suit, and the duty of the clerk to make and keep in his office an index, " with such references to the said notices as will enable all persons interested to search his office for such notices without inconvenience." Among other requisites, the notice must "set forth the *title* of the cause."

It is not disputed that a notice was filed in the present case. In naming the parties, however, in the title of the cause, it designated the defendant Fowler by the name of John *F.* Fowler, instead of John Fowler; and the question is, whether, notwithstanding this error in a single letter of a single name, there

was or was not a sufficient "setting forth of the title of the cause," to satisfy the requirements of the law.

The purchaser, Osborne, admits that he caused the title of the property to be examined by counsel before paying his money; and he alleges that he had "no knowledge or information" of the pendency of any suit in regard to it. The law, however, presumes, and such probably was the fact, that either he or his agent, in examining the index in the clerk's office, saw a reference to a suit pending against John *F.* Fowler. Was not this a circumstance sufficient to put a person of ordinary caution on inquiry?" Slight mistakes in the spelling of names are, and are well known to be, of daily and hourly occurrence. And it is also a well-settled and well-known rule of law, that middle letters, like "junior" additions, although descriptive, are not essential parts of a name. (*The People* agt. *Collins,* 7 *Johns. R.* 549; *Franklin* agt. *Tallmadge,* 5 *J. R.* 84; *Roosevelt* agt. *Gardinier,* 2 *Cow.* 463; *Milk* agt. *Christie,* 1 *Hill,* 102. As a prudent man, then, seeing by the index that there was a suit pending against John *F.* Fowler, was he not bound for greater certainty to put himself to the very slight additional trouble of looking at the notice itself? Had he done so, he would have found that the suit related to the identical property about which he was negotiating; that the plaintiff was endeavoring to get redress for a gross breach of trust in regard to it, and that, in the end, he, the purchaser, might have to stand in Fowler's shoes, and respond to the judgment obtained against the wrongdoer. Thus admonished, then, he either did or did not inquire. If he did, he had actual notice, and cannot claim to be a *bona fide* purchaser in fact: if he did not, he was guilty of gross negligence, and should take its consequences patiently, and not attempt to place them on the shoulders of the injured party.

It should be borne in mind, that the statute of *lis pendens* is not the original grant of a right with a condition precedent attached, but a remedial provision in favor of purchasers, derogating from the existing common-law rights of suitors in chancery. To avail himself of it, therefore, the purchaser should show at least ordinary diligence. *Vigilantibus non dorimentibus*

is the maxim of the law.    No man is allowed, in spite of warning, to shut his eyes and then claim the privileges of want of sight.    He who can see, and wont see, although he cannot legally, perhaps, be made to see, must take the consequences, and be chargeable precisely in the same manner as if he had seen.

The notice in the present case, or rather the index referring to it, it appears to me, was abundantly sufficient to put the purchaser on inquiry, and to charge him with all the knowledge to which that inquiry, if entered upon, would have led.    He holds his title, therefore, subject to the decree; and had that decree directed Fowler, whether by the name of John or John F., to give the plaintiffs the lease to which they were, and were adjudged to be, clearly entitled, of the premises described in the notice, Osborne, the purchaser pending the suit, must have been required to do it for him, or to ratify the act, if done by Fowler.

But what was the decree which the plaintiffs, to effectuate the rights established and declared by the court in their favor, elected to take?    Instead of a specific performance, operating on the estate itself, they accepted, and, for aught that appears, prayed for, a substituted equivalent in money.    And the decree accordingly, having first provided for ascertaining the value of a term, such as that to which the plaintiffs were adjudged to be entitled, " ordered and decreed, that the said John Fowler pay the same to the plaintiffs."

Can the plaintiffs, on the allegation of Fowler's subsequent insolvency, now turn round and ask the court, in effect, to make another and different decree?    It seems to me, especially as against a purchaser who has paid his money, and who, although negligent, had no actual notice of the suit, they cannot.    The election they have made precludes them.    It is an issue, as the case appears before me, between two innocent parties, and the rule, potior conditio defendentis, applies.    As, however, other facts and views may perhaps be developed on a more thorough and formal investigation, I shall deny the present application by petition, with a reservation to the plaintiffs of the right to

file *a bill* or *complaint* to carry the decree into execution, making Osborne and such other persons parties as they shall be advised.

Prayer of petition denied, without prejudice and without costs.